Locke, J.
Plaintiff Larry Beane, Jr. (“Beane”) brought this action against his employer, defendant Massachusetts Container Corporation (“MCC”), and MCC’s vice president, defendant Michael W. Feehly (“Feehly”) (collectively, “Defendants”) seeking money damages based on claims of handicap discrimination under chapter 151B of the General Laws of Massachusetts. The Defendants have filed amotion for summary judgment on Beane’s claims against them. The Court heard argument on the motion on June 23, 2004. For the following reasons, the Defendants’ motion for summary judgment is ALLOWED.

BACKGROUND

[2]

On September 15, 1986, Beane began working at MCC, a Massachusetts corporation that manufactures cardboard boxes and provides goods to customers seeking to.package goods in cardboard boxes. Bernie’s position at MCC was that of a transfer car operator, a job that required him to operate a corrugator machine. As transfer car operator, Beane had to cany stacks of large sheets of paper to as many as six corrugator machines; he would put the stacks onto the corrugator machine which would assemble the stacks into cardboard boxes. Beane then had to move stacks of corrugated cardboard from the Corrugated Department to the Converting Press Finishing Department. This job is an important one at MCC as the MCC plant cannot operate without a transfer car operator. Beane’s father, Larry Beane, Sr., who has worked at MCC since 1971, testified in his deposition that “[wjithout the transfer car you don’t run any machine in [MCC’s] building.”
In 1989, Beane was diagnosed with obsessive compulsive disorder and depression. Later diagnoses of Beane included mixed personality disorder, major depression, bi-polar disorder, and alcoholism. As a result of these mental illnesses, Beane underwent several hospitalizations. Beane was hospitalized in California for one month during 1991 in an attempt to deal with his depression. He was hospitalized for two days in 1995 at the Leonard Morse Hospital. He was involuntarily hospitalized on December 31, 1995, at Marlborough Hospital because he was suicidal; he remained there for eleven days and was discharged on January 11, 1996.
On May 14, 1997, Beane admitted himself to Marlborough Hospital because he had been drinking heavily and was concerned that he would kill himself. Subsequently, Beane was admitted to Marlborough Hospital from October 21, 1997, through October 27, 1997; from November 10,1997, through November 18, 1997; on January 20, 1998; from January 30, 1998, through February 3, 1998; on July 27, 1998, for depression after having been incarcerated for eighty-two days; on September 24, 1998, for depression after completing a two-week inpatient sentence for a driving under the influence conviction; on November 29, 1998; on September 20, 1999; on December 15, 1999; and from March 27, 2000, through April 4, 2000.
From 1989 through May 2000, Beane was absent from work at MCC approximately five hundred fifty-two days (552). If Beane submitted a medical excuse verifying that he was absent on a particular day for medical reasons, then MCC would not discipline him for his absenteeism. When Beane was absent, another employee would have to operate the transfer car, but the replacements were often not as proficient in the position because they were not familiar with the job. As a result, MCC would frequently not be operating or not operate at the expected and appropriate speed *389 because a replacement was either not available or not able to perform at an optimal level.
At MCC, if an employee is absent for a day, comes to work late, or leaves work early, the employee receives an “occurrence.” If the employee receives three occurrences in one month or if the employee receives two occurrences per month for three months in a row, then the employee receives a warning. If the employee receives four warnings in one year, the employee is subject to termination.
After Beane’s hospitalization at Marlborough Hospital from March 27, 2000, through April 4, 2000, his physician, Dr. William Kadish (“Dr. Kadish”) wrote to MCC that Beane was cleared to return to work on April 5, 2000. Beane did not return to work on that date; in fact, Beane was absent from work nine days without an excuse (specifically, April 5, 6, 7, 11, 14, 21, 25, 26, and 27). Dr. Kadish stated in his deposition that, as of spring 2000, Beane “was very ambivalent” about whether his mental illnesses would enable him to continue to work. In fact, on a “Progress Note” dated March 29, 2000, Dr. Kadish wrote, “Patient [Beane] is extremely distraught, depressed, preoccupied, suicidal, realizes he can no longer function at work or independently . . . [and that he is] functionally disabled” and would benefit from long-term rehabilitation.
Approximately one or two weeks prior to May 3, 2000, as well as on May 3, 2000, Edward Cooper (“Cooper”), the president of Local 1702 PACE Union (“Union”) of which Beane was a member, met with Feehly to discuss Beane’s absenteeism. They discussed transferring Beane to a general helper position. Before such a position could be announced, MCC and the Union would have to confer, and the job would have to be posted for three days; after that three-day period, the job would be offered to a qualified person with the most seniority. Beane had never told Feehly, Cooper, or any other MCC employee that he would be able to show up for work more often if he were given another job. On various occasions when the union steward Scott Luna (“Luna”) and Feehly had suggested to Beane that he take another job, Beane always refused.
On May 3, 2000, Feehly held a meeting (“Meeting”) in his office with Beane, Cooper, Luna, and MCC Human Resources Director Suzette Bouvier (“Bouvier”) in attendance. Beane understood the Meeting resulted from his having four warnings. At the Meeting, Feehly asked Beane how he was feeling, and Beane told him that he was a mess mentally. Feehly asked Beane what he would do if he no longer worked for MCC, and Beane replied that his doctor wanted him to undergo long-term inpatient treatment for his mental illness. Neither Cooper nor Luna spoke or asked any questions at the Meeting, and Beane did not ask for the general helper’s job. Feehly terminated Beane at the Meeting.
On June 29, 2000, Beane overdosed on his medications, causing him to become psychotic and to lacerate himself. He was admitted to Marlborough Hospital and remained there until he was discharged on July 11,2000. After jumping out of a moving vehicle on two occasions, Beane was involuntary brought to the emergency room on July 12, 2000. He was admitted to Marlborough Hospital on July 13, 2000, and, while there, his medications were changed leading him to feel calmer and “in better control.” Beane was discharged from Marlborough Hospital on September 19, 2000.
An arbitration hearing was held on October 4,2000, in Marlborough, Massachusetts, after the Union filed a grievance alleging that Beane’s discharge was not for just cause. In his October 16, 2000, decision, the Arbitrator stated that
it was incumbent upon Mr. Feehly to have made clear at the . . . [M]eeting, to Beane, Cooper, and Luna]. . . that a General Helper’s job was available to Beane] when he was physically able to return to work. His failure to do so at that time and in view of [Beane’s] lack of reasonable control to comply with the plant rules re the progressive discipline for habitual absenteeism because of his “chronic psychiatric illness,” brings the Arbitrator to conclude the Company inappropriately applied the termination provision of the discipline for habitual absenteeism in this case. And finds, therefore, the discharge of [Beane] was not for just cause.
(Emphases in original.) The Arbitrator ordered that Beane be reinstated at MCC as a General Helper with total seniority restored as soon as he received a medical release to do so. The Arbitrator also held that Beane “shall not however, receive any back pay since he had not been willing to accept the General Helper job when it had been previously offered.” (Emphasis in original.) Pursuant to this order, MCC reinstated Beane on November 6, 2000, as a general helper with total seniority.
Beane filed this suit on June 5, 2002, seeking back pay for the period between his termination and his reinstatement. Count I alleges that MCC violated G.L.c. 151B by engaging in unlawful discrimination on the basis of Beane’s handicap. Count II asserts that Feehly violated G.L.c. 151B, §4(5), by aiding, abetting, and inciting MCC in discriminating against Beane.

DISCUSSION

This court grants summary judgment where there are no genuine issues of material fact and, if viewing the entire record in the light most favorable to the non-moving party, the moving party demonstrates it is entitled to judgment as a matter of law. Mass.R.Civ.P. 56; Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 711 (1991). See also Parent v. Stone & Webster Eng. Corp., 408 Mass. 108, 112 (1996) (reasoning that the moving party bears the burden of *390 showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law). A party moving for summary judgment that does not bear the burden of proof at trial may demonstrate the absence of a trial issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis, 410 Mass. at 716. The nonmoving party cannot defeat the motion for summary judgment by resting on his or her pleadings and mere assertions of disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). The court may consider the pleadings, affidavits, answers to interrogatories, depositions, and exhibits submitted in arriving at its conclusion on the motion. Mass.R.Civ.P. 56(c).
I. Count I — Employment Discrimination
Pursuant to section 4(16) of chapter 15 IB of the General Laws of Massachusetts, it is unlawful for “any employer ... to dismiss from employment or refuse to hire, rehire or advance in employment or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicap person, capable of performing the essential functions of the position involved with reasonable accommodation!.]” “To establish a prima facie case of employment discrimination on the basis of handicap, the plaintiff must show [1] that [he] was terminated, [2] that [he] is ‘handicapped,’ [3] that [he] is a ‘qualified handicapped person,’ and [4] that [he] was terminated because of [his] handicap.” Russell v. Cooley Dickinson Hosp. Inc., 437 Mass. 443, 449 (2002); see Dartt v. Browning-Ferris Indus. Inc. (Mass.), 427 Mass. 1, 7 (1998) (holding that plaintiff alleging G.L.c. 15IB violation need not establish he was terminated or received adverse treatment “ ‘solely’ because of his handicap”). A qualified handicapped person is any person who has a handicap “who is capable of performing the essential functions of a particular job with reasonable accommodation to his handicap.” G.L.c. 151B, §1(16) (emphasis added).
Assuming for the purposes of this decision that Beane’s mental illnesses constituted a handicap[3] and that MCC terminated him because of that handicap, the issue before this court is whether Beane was a qualified handicap person such that his termination violated G.L.c. 15IB.
A. Essential Function
Two Superior Court cases provide guidance in determining whether Beane’s presence was an essential function of his transfer car operator position. Where genuine facts are in dispute, this determination is one of fact for the juiy to decide. See Labonte v. Hutchins & Wheeler, 424 Mass. 813, 823 (1997); Cargill v. Harvard Univ., 60 Mass.App.Ct. 585, 602-03 (2004). Here, however, the undisputed facts enable this Court to find as a matter of law that Beane’s attendance was an essential function of his transfer car operator position.
In Picot v. New England Tel & Tel Co., this court (Flannery, J.) acknowledged that “a regular and reliable level of attendance is a necessary element of most jobs.” Civil No. 81969, *2 (Mass Super.Ct. Dec. 15, 1994) (3 Mass. L. Rptr. 80) (Flannery, J.), citing Tyndall v. National Educ. Centers, 31 F.3d 209, 213 (4th Cir. 1994) (holding that plaintiff “held a job that could not be performed away from [her employer’s campus]; her position required that she teach the assigned courses during the scheduled class times and spend time with her students”). Regular attendance was an essential function of the plaintiffs job “due to the high costs of absenteeism!.]” Id. at *4 (footnote omitted). In Smith v. Bell Atlantic, however, this court (Brassard, J.) distinguished Picot on its facts and found that Smith’s employer failed to prove that regular attendance was an essential function of the plaintiffs job. Civil No. 98-2828, *6-7 (Mass. Super. Ct. July 18, 2001) (13 Mass. L. Rptr. 397) (Brassard, J.). The Smith court noted that the summary judgment record in Picot
indicated that at the time of her dismissal, the employee had previously been warned three times about her excessive absenteeism and was a member of a union whose collective bargaining agreement with the employer considered good and regular attendance to be an essential function of her job .. . [and that] the employer offered evidence that the employee’s frequent absences resulted in high costs.
Id. at *6. The employer in Smith, however, “submitted no evidence indicating that Smith had formal notice that her job was in jeopardy, nor has it submitted materials evidencing that Smith’s absences caused [the defendant] to suffer financially.” Id. at *7. In fact, the employer allowed the plaintiff and other similarly situated employees to work at home, and one of the defendants testified in his deposition that it did not matter where the plaintiff did her job, as long as she did it in a cost-effective manner. Id. at *6; see Ward v. Massachusetts Health Research Inst., Inc., 209 F.3d 29, 35 (1st Cir. 2000) (holding attendance not essential function of plaintiffs job because, in part, defendant provided no “evidence that the nature of [the plaintiffs] position requires that he be present during specific hours of the day”).
The undisputed facts as set forth in the summary judgment record indicate that Beane’s attendance at work was an essential function of his transfer car operator position. When he was absent, MCC would assign another employee to operate the transfer car, but the replacements were often not as proficient in the position because they were not familiar with the job, and, as a result, MCC would not be operating or not operate at the expected and appropriate speed *391 because a replacement was either not available or not able to perform at an optimal level. In fact, Beane’s father testified at his deposition that without the transfer car, no other MCC machine could run. As in Picot, the Defendants have sustained their burden of establishing that attendance is an essential function of Beane’s job as a transfer car operator.
B. Reasonable Accommodation
As noted, a qualified handicapped person is “a handicapped person who is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of a particular job with reasonable accommodation to his handicap.” G.L.c. 151B, §1(16). The summary judgment record indicates that Beane could not perform the essential function of attendance with respect to his transfer car operator, but Beane argues that he could do so with reasonable accommodation. The reasonable accommodations with which Beane asserts MCC had the duty to provide him include a less stressful job; a helper; a modification of MCC’s absenteeism policy; or an extended temporary leave of absence.

1.Less Stressful Job

The reasonable accommodation with which an employer must provide an employee need only make the employee capable of performing the essential functions of a particular job. G.L.c. 151B, §1(16); Russell, 437 Mass. at 454. In Russell the court noted that G.L.c. 15 IB “is less generous than the [Americans with Disabilities Act of 1990], which defines ‘reasonable accommodation’ to include reassignment to vacant positions.” Id., citing 42 U.S.C. §12111(10)(B). Even though, in Russell, it was undisputed that there were no vacant positions in the departments in which the plaintiff was interested, the court implicitly held that even if such positions were open and available, G.L.c. 15 IB’s more restrictive reasonable accommodation provision would not require the defendant to offer the positions to the plaintiff. See id. The language of the statute itself therefore limits its application to Beane’s transfer car operator position. Accordingly, MCC was not required to offer Beane another position in the company, regardless of whether it was available or whether MCC had to create it.
The Superior Court case of Hayward v. Massachusetts Water Res. Auth. provides useful language with respect to this issue. See Civil No. 98-0953F *5 (Mass. Super. Ct. May 15, 2001) (13 Mass. L. Rptr. 239) (Gants, J.). There, the plaintiff asserted the defendant was required to offer him the reasonable accommodation of placing him in an existing position that was less physically demanding than his current position. Id. at *1,2. This court (Gants, J.) held that
[t]he employer’s duly of reasonable accommodation exists only with respect to a particular job — this duty obligates the employer to make reasonable adjustments or adaptations to permit a handicapped person to perform the essential functions of a particular job ... [When] an employee is no longer able, even with reasonable accommodation, to perform the essential duties of his particular job, the employer’s duty of reasonable accommodation no longer applies and the only applicable duty to that employee is the duty not to discriminate on the basis of handicap."
Id. at *4. This duty not to discriminate requires the employer “to treat a handicapped employee in the same fashion as it treats anon-handicapped employee who, through no fault of his own, no longer can continue in his previous job, either because the job has been eliminated or has been upgraded beyond the qualifications of the employee.” Id.
The language of the statute coupled with Massachusetts courts’ reading of that statute does not require MCC to offer Beane a different position from that of transfer car operator.

2.Helper

As G.L.c. 15 IB does not require an employer to create a position for the employee as a reasonable accommodation, it follows, then, that the employer need not create a new position to assist the employee in performing his own job. Beane’s request that MCC provide him with a helper is essentially a request that MCC create a new position for him. Such a request is not a reasonable accommodation, thus MCC’s failure to do so does not violate G.L.c. 15IB. Russell, 437 Mass. at 454.

3.Modification of Absenteeism Policy

Beane also argues that MCC should have offered to modify its absenteeism policy to accommodate his handicap. “[Reasonable accommodation!, however,] does not include waiving or excusing an inability to perform an essential job function” Cox, 414 Mass. at 390. Even if modification of an absenteeism policy constitutes a reasonable accommodation, MCC is under no obligation to provide this accommodation if it “can demonstrate that the accommodation required to be made to the physical or mental limitations of [Beane] would impose an undue hardship to the employer’s business.” G.L.c. 151B, §4(16); Dahill v. Police Dep’t of Boston, 434 Mass. 233, 243 (2001); Cargill, 60 Mass.App.Ct. at 603-04. The evidence that MCC has presented demonstrates that modifying its absenteeism policy to accommodate Beane would cause MCC undue hardship. Whenever Beane was absent, another employee operated the transfer car in his stead; the replacements were frequently not as proficient in the position because they were not familiar with the job. Often, as a result, MCC would not be operating or would not operate at the expected and appropriate speed because a replacement was either unavailable or unable to perform at an optimal level.
Modifying the absenteeism policy would result in more absences for Beane thereby requiring an em *392 ployee to work as Beane’s substitute more frequently, and, in turn, negatively affecting MCC’s productivity. Such a modification would therefore result in an undue hardship for MCC. Accordingly, MCC was not required to modify its absenteeism policy to accommodate Beane.
4. Extended Leave of Absence
In his opposition to the Defendants’ motion for summary judgment, Beane states that MCC “should also have considered extending to [Beane] a temporary leave of absence for a definite period of time in order to allow him to obtain medical care which may have eventually solved his absenteeism problem.” Even assuming such a request would have constituted a reasonable accommodation, Beane has presented no evidence that he made this request to MCC. Accordingly, MCC was under no obligation to offer Beane an extended leave of absence. See Russell, 437 Mass. at 457 (holding that “employee’s initial request for an accommodation . . . triggers the employer’s obligation to participate in the interactive process of determining one”).
C. Conclusion
Thus, the undisputed facts demonstrate that, as a matter of law, MCC’s behavior with respect to Beane did not constitute discrimination in violation of G.L.c. 15 IB. The Defendants’ motion for summary judgment on Count I is therefore ALLOWED.
II. Count II — Aiding and Abetting Discrimination
Section 4(5) of G.L.c. 15 IB prohibits “any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so.” Beane alleges that Feehly engaged in such aiding and abetting with respect to MCC’s violation of G.L.c. 15 IB. As established above, however, MCC did not violate G.L.c. 15IB. Accordingly, this conclusion resolves Count II against Feehly. See Russell, 437 Mass. at 458 n.7. The Defendants’ summary judgment motion as to Count II is ALLOWED.

ORDER

For all the reasons contained herein, it is ORDERED that the Defendants’ motion for summary judgment is ALLOWED.

The facts are derived from exhibits submitted by the parties in support of, or in opposition to, the Defendants’ motion for summary judgment. The facts set forth in the “Background” section are either undisputed or fully justified from the evidence.

A “handicap” is “(a) a physical or mental impairment which substantially limits one or more major life activities of a person; (b) a record of having such impairment; or (c) being regarded as having such impairment...” G.L.c. 151B, §1(17).