Haggerty, J.
The plaintiff, Justine Hyppolite (“Hyppolite”) brought this action against the defendant, Fernald State School (“Fernald”) alleging that her termination from Fernald constituted a violation of the Massachusetts anti-discrimination statute (G.L.c. 151B), a violation of the Massachusetts Civil Rights Act (G.L.c. 12, §§11H and 111), wrongful discharge, and breach of the implied contract of employment. This case is before the court on Femald’s motion to dismiss or, in the alternative, for summaiy judgment. For the following reasons, Fernald’s motion is ALLOWED.
BACKGROUND
The undisputed facts viewed in the light most favorable to the non-moving party, as revealed by the summaiy judgment record, are as follows.
Hyppolite began working for Fernald in May 1981. Fernald is a facility operated by the Massachusetts Department of Mental Retardation (“the Department”) that provides residential, medical, and vocational services to individuals with mental retardation. Hyppolite’s position at Fernald was that of a Mental Retardation Worker I (“MRW-I”). In his affidavit, Donald Stevens (“Stevens”), Femald’s Employment Services Manager, states that MRWs in all classifications[1] provide direct care to Fernald patients in the skills of daily living.[2] He further states that those applying for a MRW position and those seeking to return to a MRW position from a medical leave are required to prove that they can lift at least fifty-five pounds from floor to shoulder.[3]
In March 2002, Hyppolite slipped on ice at work, tearing a tendon in her rotator cuff. She left work that same day and later underwent surgery for the injury. Hyppolite received workers’ compensation benefits from the Department of Industrial Accidents. It is undisputed that, after her surgeiy, Hyppolite was medically unable to return to her position as a MRW-I.
After Hyppolite had been out of work for more than one year, the Department notified Hyppolite in a letter dated May 22, 2003, that there would be a non-disciplinaiy hearing to determine the appropriate actions with respect to Hyppolite’s employment. The Department further informed Hyppolite that at that hearing, her medical histoiy and medical statements would be reviewed and her employment status would be discussed. The hearing took place on June 13, 2003.
Hyppolite’s orthopedic surgeon recommended that she avoid lifting more than twenty pounds and avoid “overhead right shoulder activities.” Further, an independent medical examiner wrote that Hyppolite could not return to patient care if she had to “lift patients in and out of bed, in and out of a chair, and so forth.”
Hyppolite requested that she be provided with sedentary work rather than her MRW-I position. The doctor who performed the independent medical examination also recommended that Hyppolite perform “some sort of sedentary job[.]” In a July 28, 2003, letter, the Department denied this request, informing Hyppolite that her employment was terminated because, through no fault of her own, she was unable to resume her MRW-I duties and because there was a poor prognosis for her to return to work in the foreseeable future.
Hyppolite filed a complaint with the Massachusetts Commission Against Discrimination (“MCAD”) on October 6,2003, alleging that Fernald’s refusal to provide her with work in a light duty capacity constituted a failure to make reasonable accommodation in violation of G.L.c. 15IB. She filed her complaint in the Superior Court on March 23, 2004, alleging that even though Fernald knew she could work in a Tight duty” capacity, Fernald terminated her “instead of offering her another position.”
DISCUSSION
Summaiy judgment is granted where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Mass.R-Civ.P. 56(c); Cassesso v. Commissioner of *403 Corr, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). As the moving party has this burden, the court considers the evidence presented in the light most favorable to the non-moving party. Mass.R.Civ.P. 56(c); Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991); Parent v. Stone & Webster Eng’g Corp., 408 Mass. 108, 113 (1990); Flynn v. City of Boston, 59 Mass.App.Ct. 490, 491 (2003).
The moving party may satisfy its burden either by submitting affirmative evidence negating an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). “(B]are assertions and conclusions . . . are not enough to withstand a well-pleaded motion for summary judgment.” Polaroid Corp. v. Rollins Envtl. Servs., Inc., 416 Mass. 684, 696 (1993). Moreover, the “party against whom summary judgment is sought is not entitled to a trial simply because he has asserted a cause of action to which state of mind is a material element. There must be some indication that he can produce the requisite quantum of evidence to enable him to reach the jury with his claim.” Dexter’s Hearthside Rest., Inc. v. Whitehall Co., 24 Mass.App.Ct. 217, 223 (1987).
I. Count I - Employment Discrimination
Section 4(16) of chapter 15 IB of the General Laws of Massachusetts renders it unlawful for “any employer ... to dismiss from employment or refuse to hire, rehire or advance in employment or otherwise discriminate against, because of [her] handicap, any person alleging to be a qualified handicap person, capable of performing the essential functions of the position involved with reasonable accommodation!.]” ‘To establish a prima facie case of employment discrimination on the basis of handicap, the plaintiff must show [1] that she was terminated, [2] that she is ‘handicapped,’ [3] that she is a ‘qualified handicapped person,’ and [4] that she was terminated because of her handicap.” Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 449 (2002); see Dartt v. Browning-Ferris Indus., Inc. (Mass.), 427 Mass. 1, 7 (1998) (holding that plaintiff alleging G.L.c. 151B violation need not establish she was terminated or received adverse treatment “ ‘solely’ because of [her] handicap”). A qualified handicapped person is any person who has a handicap “who is capable of performing the essential functions of a particular job with reasonable accommodation to [her] handicap.” G.L.c. 151B, §1(16).
Assuming for the purposes of this decision that Hyppolite’s shoulder injury constituted a “handicap,”[4] the issue is whether Hyppolite is a qualified handicapped person. Those in MRW positions provide direct care to Femald’s patients in the skills of daily living, and applicants must demonstrate that they can lift at least fifty-five pounds from floor to shoulder. Such lifting is an essential function of the MRW-I job.
It is undisputed that Hyppolite was medically determined unable to return to her position as a MRW-I. It is also undisputed that Hyppolite should avoid lifting more than twenty pounds and that she cannot perform a job that would require her to lift patients in and out of beds and chairs. Thus, Hyppolite cannot perform the essential functions of her MRW-I job.
‘To survive summary judgment, [Hyppolite] must also establish the failure of [Femald] to provide her with a reasonable accommodation.” Russell, 437 Mass, at 453. “[I]t is the employee’s initial request for an accommodation which triggers the employer’s obligation to participate in the interactive process of determining one.” Id. at 457, quoting Taylor v. Principal Fin. Group, Inc., 93 F.3d 155, 165 (5th Cir. 1996) (relying on 29 C.F.R. § 1630.9). Hyppolite alleges in her complaint that Femald knew she could return to work in a “light duty” capacity but that Femald terminated her “ instead of offering her another position.” (Emphasis added.)
‘To fulfill their obligation of a reasonable accommodation to a handicap, employers need not make substantial changes in the standards of a job.” Dziamba v. Warner & Stackpole LLP, 56 Mass.App.Ct. 397, 405 (2002), citing Beal v. Selectmen of Hingham, 419 Mass. 535, 542 (1995). “[Reasonable accommodation [also] does not include waiving or excusing an inability to perform an essential job function.” Cox v. New England TeL & Tel Co., 414 Mass. 375, 390 (1993). Moreover, “[a]n employer is not required to create a new position as a reasonable accommodation to the handicapped employee.” Dziamba, 56 Mass.App.Ct. at 405, citing Russell, 437 Mass, at 454.
Here, Hyppolite has neither alleged nor demonstrated that any accommodation to her MRW-I position would enable her to lift Femald patients, an essential function of the MRW-I position. Rather, Hyppolite requested that Femald offer her another position that involves some sort of light duty. Accordingly, as Hyppolite cannot establish that she can perform the essential function of lifting Femald patients with any sort of requested reasonable accommodations, she is not a qualified handicapped person. Femald’s motion to dismiss or, in the alternative, for summary judgment is ALLOWED with respect to Count I.
II. The Remaining Counts
The plaintiff also alleges that Femald violated the Massachusetts Civil Rights Acts, G.L.c. 12, §§11H and *404 111, engaged in wrongful discharge and in a breach of the implied covenant of good faith and fair dealing. These claims are barred by the exclusively provision of G.L.c 151B, §9.[5] To the extent that the plaintiffs other claims are simply recast versions of c. 151B claim, they are barred by the statute’s exclusively provision. Green v. Wyman-Gordon, Co., 422 Mass. 551, 558 (1996) (citations omitted); Cargill v. Harvard University, 60 Mass.App.Ct. 585, 604 (2004).
Since the plaintiff has not asserted factual allegations beyond those asserted in support of the c. 15 IB claim, her remaining claims necessarily fail. In any event, they are without merit.
A. Count II - Violation of Massachusetts Civil Rights Act
Hyppolite alleges that Femald’s termination of her constitutes a violation of Massachusetts’ Civil Rights Act G.L.c. 12, §§11H and 111. Section 11H states,
[wjhenever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States or of rights secured by the constitution or laws of the Commonwealth, the attorney general may bring a civil action for injunctive or other appropriate equitable relief).]
Section 111 states, “Any person whose exercise or enj oyment of rights secured by the constitution or laws of the Commonwealth, has been interfered with, or attempted to be interfered with, as described in section 11H, [above,] may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate equitable reliefl.]” Thus, to state a civil rights violation claim, a plaintiff must demonstrate that a person or persons interfered with her state or federal rights by threats, intimidation, or coercion. See G.L.c. 12, §§11H, 111.
“[T]here is no indication in the [Massachusetts Civil Rights Act] that the word ‘person’ includes either the Commonwealth or any of its political subdivisions.” Howcroft v. City of Peabody, 51 Mass.App.Ct. 573, 592 (2001). The Department maintains and operates Femald; therefore, Hyppolite can not maintain an action against Fernald alleging a violation of the Civil Rights Act. See id. Commonwealth v. ELM Med. Lab., Inc., 33 Mass.App.Ct. 71, 76 n.9 (1992) (drawing no distinction between suits against the Commonwealth and suits against a department of the Commonwealth) .
There is an additional reason this count fails. “Under §111, which incorporates §11H, a plaintiff must prove that by threat, intimidation, or coercion a defendant has interfered with or attempted to interfere with, rights the Constitution or the laws of the Commonwealth secure.” Benevolent & Protective Order of Elks, Lodge No. 65 v. Planning Bd. of Lawrence, 403 Mass. 531, 558-59 (1988), citing G.L.c. 12, §§11H, 111. Hyppolite has not alleged with specificity any threats, intimidation, or coercion in which Femald engaged, nor has Hyppolite alleged any state or federal rights with which Fernald has interfered. Additionally, as discussed above with respect to G.L.c. 151B, there is no evidence that Femald’s termination of Hyppolite was improper. Accordingly, Femald’s motion to dismiss, or in the alternative, for summary judgment is ALLOWED with respect to Count II.
B. Counts III and IV
Hyppolite also alleges that Fernald’s termination of her constituted wrongful discharge (Count III) and breach of the implied contract of employment (Count IV). As set forth above with respect to Hyppolite’s G.L.c. 151B claim, Hyppolite was medically determined to be unable to return to her MRW-I position. Thus, Femald was under no duty to do any more for Hyppolite than it did. Fernald’s motion to dismiss, or, in the alternative, for summary judgment is therefore ALLOWED with respect to Count III.
In Count IV, Hyppolite claims that Femald violated the implied good faith and fair dealing implicit in all Massachusetts contracts. Harrison v. Netcentric Corp., 433 Mass. 465, 472-73 (2001). Again, as discussed above, Fernald properly discharged Hyppolite after she was medically determined unable to return to her MRW-I job.[6] Therefore, Femald’s motion to dismiss or, in the alternative, for summary judgment, with respect to Count IV is also ALLOWED.
ORDER
For the foregoing reasons, Fernald’s motion to dismiss or, in the alternative, for summary judgment is ALLOWED.

According to Stevens, MRW-I is the entry-level position of a series of four classifications, from MRW-I to MRW-IV, and AFSCME Local 402 represents all of the classifications.

In its statement of facts, Femald expands on this description, stating that the “skills of daily living” include “feeding, bathing, toileting, and dressing clients; assisting clients in behavioral, recreational, and habilitative programs; and performing client-related housekeeping — cleaning rooms, doing laundry, making beds, and washing wheelchairs.” Femald cites to Stevens’ affidavit for this statement, but this information does not appear in Stevens’ affidavit. Accordingly, the court does not consider this unsupported factual statement.

Hyppolite disputes this statement of fact, but she has not provided any evidence to support any other finding.

A “handicap” is “(a) a physical or mental impairment which substantially limits one or more major life activities of a person; (b) a record of having such impairment; or (c) being regarded as having such impairment...” G.L.c. 151B, §1(17).

"[A]s to acts declared unlawful by Section four, the procedure provided in this chapter, while pending, shall be exclusive.” G.L.c. 15IB, §9.

The court notes that it is disputed whether Hyppolite was an at-will employee of Fernald. That dispute, however, is not material as the record does riot support a finding of bad faith.