ELISE RUSSELL vs. COOLEY DICKINSON HOSPITAL, INC., &
another.[1]

Hampshire. March 7, 2002. - August 8, 2002.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Anti-Discrimination Law,* Handicap, Employment. *Employment,*
Discrimination. *Estoppel. Workers' Compensation Act,* Preference in hiring.
*Words,* "Qualified handicapped person."

Pursuit and receipt of workers' compensation benefits based on an assertion of
    total temporary disability did not automatically estop a plaintiff from
    pursuing an action for employment discrimination on the basis of handicap
    under G. L. c. 151B, § 4 (16), where the plaintiff was able to produce
    evidence sufficient to raise a question as to her ability, if provided with a
    reasonable accommodation, to perform the essential functions of the posi-
    tion in question [450-453]; however, summary judgment in favor of the
    defendant employer was appropriate where the plaintiff did not have any
    reasonable expectation of establishing that the hospital, by failing to create
    a new position for her, to provide her with indefinite leave, or to assign her
    to a position that she did not request, failed to provide her with a reason-
    able accommodation for her disability [453-458].
A plaintiff in an employment discrimination action failed to demonstrate that
    her employer denied her the hiring preference to which she was entitled
    under G. L. c. 152, § 75A [458], and failed to establish the elements of her
    claims of fraudulent and negligent misrepresentation on the part of her
    employer [458-459].

CIVIL ACTION commenced in the Superior Court Department on
May 6, 1997.

The case was heard by *Peter A. Velis,* J., on motions for sum-
mary judgment.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Susan D. Sachs* for the plaintiff.

*Margaret W. Hassan* for the defendants.

IRELAND, J. This case presents a question of first impression in

[1]Sharon L. Gasior, director of human resources and employee health from
1994 to 1996, and vice-president of human resources during and after 1996.

the Commonwealth: whether an employee who receives workers' compensation benefits for "temporary total disability" is precluded from claiming that she is a "qualified handicapped person," capable of performing "the essential functions of the position involved" with or without "reasonable accommodation," for purposes of claiming employment discrimination under G. L. c. 151B, § 4 (16). A Superior Court judge granted summary judgment for the defendants, concluding that the plaintiff was barred from claiming that she was a "qualified handicapped person" for purposes of bringing an employment discrimination claim because she was receiving disability benefits on the assertion of being "temporarily totally disabled." The judge further concluded that the defendants did not fail to provide the plaintiff with a reasonable accommodation and, therefore, were entitled to summary judgment on those claims. The plaintiff appealed and we transferred the case to this court on our own motion. The plaintiff claims that the rulings of the Superior Court were erroneous, that she should not have been barred automatically from claiming she was a "qualified handicapped person" simply because of her prior claims for, and receipt of, disability benefits, and that the defendants failed to provide her with a rehabilitation position, leave extension, or reserve position to accommodate her disability, in violation of G. L. c. 151B, § 4 (16). Although we conclude that pursuit, and receipt, of disability benefits based on an assertion of total disability does not automatically estop a plaintiff from pursuing an action for employment discrimination, we affirm the judgments in this case because the plaintiff has no reasonable expectation of showing that Cooley Dickinson Hospital, Inc. (hospital), failed to provide a reasonable accommodation under G. L. c. 151B, § 4 (16).

I. *Facts.*

Because an understanding of the facts is critical to an understanding of the results, we set them out in some detail. The plaintiff, Elise Russell, currently works at the hospital as a part-time patient registration and admitting assistant. Russell began her employment at the hospital in the admitting department in 1987, taking a job in another department for a short time, and returning to the admitting department in 1988.

Admitting assistants perform various duties associated with the admitting of patients, including entering patient data into the hospital computer system. The relevant job description requires the use of keyboarding, stating that admitting assistants must have "fine motor skills for the effective and efficient handling of writing tools, office equipment . . . and entry of patient data."

On numerous occasions between December, 1991, and September, 1994, the plaintiff reported work-related injuries that caused pain in her upper extremities, neck, or back, which she believed were related to her use of the computer. The hospital responded by adjusting the plaintiff's work environment in consultation with a physical therapist and specialist treating the plaintiff. Among the changes the hospital made were excusing the plaintiff from working at the reception desk, lowering her desk to a specified height, adjusting the height of her computer, providing new chairs with improved ergonomics, providing a document holder, providing wrist rests, and permanently assigning the plaintiff to the fourth of the admitting clerk stations to accommodate a lighter work volume and to allow the plaintiff to pace herself.

The plaintiff took an industrial accident leave of absence from August 31, 1993, to November 24, 1993, for surgery to alleviate some of her symptoms. Her pain, however, persisted when she returned to work. On the advice of her physician, the plaintiff commenced a second leave of absence in September, 1994. The plaintiff received workers' compensation benefits based on temporary total disability during both of her leaves of absence.[2]

The hospital's third-party administrator of its self-insured workers' compensation fund, Compco, hired Lucinda Palmer, president of Action Care Management Services, Inc., to manage the plaintiff's medical treatment and to facilitate her return to work. Palmer reviewed the plaintiff's medical records, interviewed her, visited and spoke with her regularly, and ac-

---

[2]The plaintiff continued to receive workers' compensation benefits, based on her representation of temporary total disability, until the hospital rehired her in 1996 on a part-time basis. Thereafter, she received benefits for partial disability for any weeks in which she did not work forty or more hours.

companied her to various medical appointments. She submitted periodic reports to Compco, copies of which she forwarded to the plaintiff's attorney at the attorney's request.[3]

To meet departmental needs during the plaintiff's absence, the hospital requested that part-time admitting assistants work additional hours, had the department's assistant managers cover a shift, and used reserve employees to cover shifts when they were available.[4] In January, 1995, it posted a temporary sixteen-hour a week admitting assistant position to cover some of the plaintiff's hours.

During the winter spanning 1994 to 1995, the plaintiff's condition improved and she expressed a desire to return to work. Palmer contacted the plaintiff's supervisor, Janet Mc-Enaney, who indicated that she was willing to allow the plaintiff to return to work on a modified duty basis and to "accommodate [the plaintiff] on a very gradual and incremental return to work." As a preliminary step, commonly used to acclimate returning employees still experiencing pain, Palmer scheduled a "work simulation" with an occupational therapist in March, 1995. During the simulation, the plaintiff performed functions that would be required of her at work, including keyboarding. The simulation occurred over a period of weeks, starting with ten minutes of keyboarding and gradually increasing to fifteen minutes. The plaintiff suffered significant pain during the simulations and discontinued them.

Palmer reported that, after completing occupational therapy and visiting with physicians, "it was determined that [the plaintiff] is apparently not going to be able to fulfill the functional demands of her job." Palmer copied the report to the plaintiff's attorney. The plaintiff did not tell Palmer or anyone at the hospital that she disagreed with the report or that she thought she could perform her job.

Palmer then focused her efforts on "vocational rehabilitation" for the plaintiff so that she could learn the skills necessary to perform a different job, not requiring heavy keyboarding or

---

[3]The plaintiff is represented by new counsel on appeal.

[4]Reserve employees do not normally fill vacant positions, but are used instead to address needs for staff when a regular employee is ill or on leave or when the work load in a particular department is heavy. Reserve employees are required only to accept one shift per quarter to retain their status.

writing. Palmer's report indicated that the plaintiff agreed with this approach. Palmer then requested, with the plaintiff's cooperation and the plaintiff's attorney's approval, that the Department of Industrial Accidents office of education and vocational rehabilitation categorize the plaintiff as suitable for vocational rehabilitation because of her inability to return to her job. The plaintiff and her attorney participated in the preparation of an individualized work rehabilitation plan.

On May 11, 1995, Palmer wrote to the defendant Sharon L. Gasior, inquiring whether the plaintiff could pursue another job at the hospital. The surgeon who operated on the plaintiff's hand recommended pursuing other positions with the following limitations: "[F]ull time [work] with no continuous use of arms or hands in repetitive tasks, such as keyboarding or writing, for greater than [twenty] minutes. Repetitive tasks need to be followed by a brief rest, and then she must change to a different task. She must perform no repetitive lifting or carrying, and intermittent lifting or carrying is allowed to [fifteen] pounds only."

On May 26, 1995, Palmer, Gasior, and Joyce Boucher, the hospital's occupational health nurse, met and discussed the possibility of finding the plaintiff a position suiting the limitations set out by her doctor. They concluded that there were no such positions at that time, with the exception of possible reserve positions in the linen or laundry departments. Palmer and Boucher examined the positions in the linen and laundry departments, and concluded that there was no single position that would meet the plaintiff's restrictions, but that there were functions in the various jobs that the plaintiff could perform. Gasior agreed to consider creating a rehabilitation position of a composite of duties from different positions. Gasior told Palmer that if a rehabilitation position were identified and could be provided, she would inform Palmer or the plaintiff in writing.

Gasior consulted with the supervisors in the laundry and linen departments and the director overseeing both departments. The creation of a position comprising the various duties that the plaintiff likely could perform would require oversight by supervisors of both departments. Gasior was unable to resolve the question of a rehabilitation position for the plaintiff until September, 1995.

Hospital policy provides that industrial accident leaves of absence are not to exceed one year, the longest leave the hospital provides. The plaintiff was aware of the policy prior to May, 1995, and believed that she would be terminated at the end of her leave if the hospital did not create a rehabilitation position for her.

In late July, 1995, Gasior wrote to Palmer stating that she still did not know whether the hospital would be able to provide a rehabilitation position because the issue was still being evaluated. Palmer shared the letter with the plaintiff. On July 28, 1995, the plaintiff told Palmer about the hospital policy regarding leaves of absence, positing that the hospital was "stalling" its response. Palmer conveyed the plaintiff's concerns to Gasior on August 17, 1995, who responded that if a rehabilitation position were possible it could be provided even after the plaintiff was terminated.

Palmer met with the plaintiff and her attorney on August 30, 1995, and the plaintiff expressed her concern that she would be terminated when her leave expired. As a result, Palmer wrote to Gasior requesting that the hospital put the plaintiff back to work in some capacity before her leave expired, or to extend her leave pending determination whether a rehabilitation position would be made available. She also indicated that the plaintiff continued to be evaluated medically to determine what combination of treatment and accommodation would be required to return the plaintiff to work. The letter was silent regarding the plaintiff's present or future ability to work as an admitting assistant. The plaintiff's attorney also wrote to Gasior on September 6, 1995, requesting that the hospital not apply its one-year leave policy to the plaintiff, but did not make any claim as to the plaintiff's ability to perform the duties of an admitting assistant. After returning from vacation, Gasior responded to both letters, notifying Palmer that the rehabilitation position was still under consideration, but that the leave policy would be applied.

In fact, however, Gasior extended the plaintiff's leave for one additional week, during which time she was able to complete her consultations regarding the rehabilitation position, learning that it would not be possible. The plaintiff's employment was

terminated effective September 15, 1995, one week after it would have otherwise expired. The hospital divided the plaintiff's forty-hour position into two positions, one twenty-four hour position and one sixteen-hour position. Shortly thereafter, one part-time admitting assistant increased her regular hours to twenty-four.

The plaintiff began new treatments with a different hand specialist and she noted improvement during the fall of 1995. In early December, 1995, she applied for vacant admitting assistant positions at the hospital in accordance with her doctor's work clearance. The hospital offered the plaintiff the open sixteen-hour position, pending a work capacity evaluation, which was deferred for additional medical treatment. Once the evaluation was completed in the spring of 1996, the plaintiff's doctor clarified his work clearance. In August, 1996, the plaintiff began working with restrictions in the sixteen-hour admitting assistant position. Her restrictions limited her to, among other things, no more than thirty minutes at a time of continuous use of arms or hands in repetitive tasks, such as keyboarding or writing, and required that she follow repetitive tasks with a rest and a different task.

Since her return to work, the plaintiff has experienced pain and has filed incident reports stating that the pain is work related. The plaintiff also twice applied for additional hours in the admitting department, but these hours were given to another internal applicant with more seniority. She eventually increased her work schedule to twenty-six hours a week.

II. *Discussion.*

A. *Employment discrimination.* To establish a prima facie case for employment discrimination on the basis of handicap, the plaintiff must show that she was terminated, that she is "handicapped," that she is a "qualified handicapped person," and that she was terminated because of her handicap. See *Dartt v. Browning-Ferris Indus., Inc. (Mass.)*, 427 Mass. 1, 7 (1998). The issue in this case is whether the plaintiff is a "qualified handicapped person" under the provisions of G. L. c. 151B, § 1 (16), and G. L. c. 152, § 75B. A "qualified handicapped person" is defined under G. L. c. 151B, § 1 (16), as "a handicapped person who is capable of performing the essential

functions of a particular job, or who would be capable of performing the essential functions of a particular job with reasonable accommodation to his handicap."

1. *Estoppel.* The defendants argue and the judge concluded that the plaintiff cannot establish that she is a qualified handicapped person because at all relevant times she was collecting disability benefits on the basis of being "temporarily totally disabled." See G. L. c. 152, § 34. See also *Shirley's Case*, 355 Mass. 308, 311 (1969) (total disability shown if disability prevents employee from "performing remunerative work of a substantial and not merely trifling character"); *Fennell's Case*, 289 Mass. 89, 94 (1935) (when employee "is disabled from doing some types of work and is unable to obtain work of the type he is able to do," total incapacity finding warranted). The judge concluded that the plaintiff "filed for and received benefits . . . on the basis of temporary total disability during her one-year leave of absence, and thus she is barred from claiming that she was able to perform the essential functions of her job with or without reasonable accommodation." We reject this conclusion but affirm the grant of summary judgment based on the judge's alternative reasoning that the plaintiff could not establish that the hospital failed to provide her with a reasonable accommodation.

In *Labonte* v. *Hutchins & Wheeler*, 424 Mass. 813 (1997), we faced a similar question. In that case, the defendant maintained that the plaintiff was estopped from bringing a claim for discrimination because he sought disability benefits, through a law firm insurance policy, after his termination from the law firm, suggesting that a plaintiff claiming disability benefits admits that he is totally disabled and, therefore, cannot be a "qualified handicapped person." *Id.* at 816. We noted that a majority of courts reject the proposition that seeking benefits automatically disqualifies a plaintiff from bringing a discrimination claim. We stated that "[c]ourts are wary of allowing plaintiffs to play 'fast and loose with the courts' by claiming to be too disabled to perform the functions of a job and also claiming that they were terminated from their positions despite being able to perform those same functions. . . . However, if the evidence creates a disputed issue of fact whether the handi-

capped person can perform the essential functions of the job, then estoppel is not appropriate." (Citations omitted.) *Id.* Although a claim for benefits is an important factor to be considered in determining whether a fact question exists, the claim for benefits is not automatically dispositive. See *id.* at 817.

The Supreme Court of the United States faced a similar question in *Cleveland* v. *Policy Mgt. Sys. Corp.*, 526 U.S. 795 (1999), in which the plaintiff, after seeking and receiving Social Security disability insurance (SSDI) benefits,[5] brought suit against her former employer under the Americans with Disabilities Act of 1990 (ADA).[6] A Federal District Court granted summary judgment to the defendant because, in its view, the plaintiff had conceded that she was "totally disabled" and was estopped from proving an essential element of her ADA claim. *Id.* at 799. The United States Court of Appeals for the Fifth Circuit affirmed the District Court's judgment, but stated that a rebuttable presumption of estoppel arises from the application for and receipt of SSDI benefits against a plaintiff suing under the ADA. *Id.* at 800. The Supreme Court vacated the judgment of the Court of Appeals and remanded for further proceedings, noting that claims under SSDI and the ADA, "in context, . . . are often consistent." *Id.* at 797. The pursuit and receipt "of SSDI benefits does not automatically estop the recipient from pursing an ADA claim. Nor does the law erect a strong presumption against the recipient's success under the ADA." *Id.* at 797-798. The Court reasoned that "[a]n SSA [Social Security Administration] representation of total disability differs from a purely factual statement in that it often implies a context-related

---

[5]"The Social Security Disability Insurance (SSDI) program provides benefits to a person with a disability so severe that she is 'unable to do [her] previous work' and 'cannot . . . engage in any other kind of substantial gainful work which exists in the national economy.' " *Cleveland* v. *Policy Mgt. Sys. Corp.*, 526 U.S. 795, 797 (1999), quoting § 223(a) of the Social Security Act, as set forth in 42 U.S.C. § 423(d)(2)(A).

[6]We look to the Federal cases decided under the ADA as a guide to the interpretation of G. L. c. 151B. See *Labonte* v. *Hutchins & Wheeler*, 424 Mass. 813, 816 n.5 (1997). To bring an action for disability discrimination under the ADA, a plaintiff must claim that "with . . . reasonable accommodation" she could "perform the essential functions" of her job. 42 U.S.C. § 12111(8) (1994).

legal conclusion, namely 'I am disabled for purposes of the Social Security Act.' " *Id.* at 802. For example, the SSA does not take account of the possibility of "reasonable accommodation" when determining whether an individual is disabled for SSDI purposes. *Id.* at 803. "[A]n ADA suit claiming that the plaintiff can perform her job *with* reasonable accommodation may well prove consistent with an SSDI claim that the plaintiff could not perform her own job (or other jobs) *without* it." *Id.*

The Court concluded, "Nonetheless, in some cases an earlier SSDI claim may turn out genuinely to conflict with an ADA claim," and held "that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation . . . . [A]ssuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.' " *Id.* at 805-807.

We similarly conclude that a plaintiff's prior pursuit, and receipt, of benefits based on an assertion of "total disability" does not automatically estop her from pursuing a claim of employment discrimination on the basis of disability under G. L. c. 151B, § 4 (16), so long as a disputed issue of fact remains whether the plaintiff is able to perform the "essential functions of the position involved." A claim for disability benefits on the basis of total disability is evidence of the plaintiff's inability to perform the essential functions, but it is not dispositive if the plaintiff is able to raise a question of fact through other evidence of her ability (including her ability if provided "reasonable accommodation"), or through an explanation of how her disability claims and employment discrimination claims are consistent, sufficient to warrant a reasonable juror's conclusion that the plaintiff could perform the essential functions of the job.

Here the plaintiff asserted that she wanted to return to work in some capacity in May, 1995, and had obtained a medical release stating conditions on which she could return to work "full time." She continued to receive workers' compensation benefits for which she had applied at the commencement of her leave in September, 1994, but filed no further application that

would be inconsistent with her assertion that she could perform her job, at least under some conditions, as of May, 1995. Indeed, she communicated to Palmer that her condition had improved sufficiently as of May, 1995, such that she could return to at least some position. Having made full disclosure of her improved condition, the mere passive receipt of workers' compensation benefits beyond that date is not inconsistent with her claim that she could perform her job with reasonable accommodation. Viewing the evidence in the light most favorable to the plaintiff, the evidence was sufficient to raise a question as to her ability to perform the essential functions of an admitting assistant position, at least with a reasonable accommodation, and thereby survive an argument of estoppel.

2. *Reasonable accommodation.* To survive summary judgment, the plaintiff must also establish the failure of the defendants to provide her with a reasonable accommodation. On the undisputed facts in this record she cannot make such a showing.

The plaintiff alleges that the hospital failed to offer her a reasonable accommodation, asserting that she requested accommodations in several forms. She alleges that she generally requested an accommodation in May, 1995, by asking if there were any jobs available at the hospital that she could perform. She maintains further that she specifically requested accommodations in the form of a rehabilitation position and also by way of extending her leave of absence. Finally, the plaintiff argues that the hospital could have accommodated her by placing her on the reserve list, thereby preserving her seniority and employment status, without having to extend her benefits. The plaintiff's arguments are unavailing.

a. *General request for open positions and rehabilitation position.* The plaintiff asserts that the hospital failed to offer her reasonable accommodation when it did not provide her with a rehabilitation position in either the laundry or the linen department. The plaintiff maintains that the only reason the hospital advances for not extending a rehabilitation position to her is that the supervisors of those departments did not want to "take responsibility" for her. She claims that this explanation does not amount to a legitimate, nondiscriminatory basis for the hospital's action. We decline to accept the plaintiff's view.

Under Massachusetts law, an employer is barred from dismissing employees who are "capable of performing the essential functions *of the position involved* with reasonable accommodation" (emphasis added). G. L. c. 151B, § 4 (16). In this aspect, the Massachusetts statute is less generous than the ADA, which defines "reasonable accommodation" to include reassignment to vacant positions. See 42 U.S.C. § 12111(10)(B) (1994). Moreover, it is undisputed that there was no vacant position in either the laundry or the linen department of the hospital in the summer of 1995. The hospital was under no obligation to create a new position for the plaintiff. Even under the more permissive ADA, the hospital would not have been required to fashion a new position for the plaintiff. See *August* v. *Offices Unlimited, Inc.*, 981 F.2d 576, 581 n.4 (1st Cir. 1992), citing *School Bd. of Nassau County* v. *Arline*, 480 U.S. 273, 289 n.19 (1987).

The plaintiff never requested to return to her former position as an admitting assistant, nor did she indicate that she would be able to perform the essential functions of that position with accommodation. In fact, in May, 1995, Palmer wrote to Gasior to inquire whether the plaintiff could pursue a different job at the hospital, stating "[a]fter fairly extensive medical evaluation and trial work simulation, it has been determined that [the plaintiff] currently does not have the functional ability to fulfil the job of admitting clerk." By her conduct the plaintiff evinced that she could not perform the essential functions of the admitting clerk position in May, 1995, and did not request any accommodation that would enable her to perform those essential functions. Instead she sought a different position in the hospital, an accommodation the hospital was under no obligation to provide.

b. *Extension of plaintiff's leave of absence.* The plaintiff also asserts that the hospital failed to provide her with a reasonable accommodation when it refused to extend her leave of absence beyond one year. The plaintiff highlights the reasons that the hospital declined to extend her leave, stating that it did not undertake an individualized analysis, did not consider making an exception to the one-year leave policy, and based its decision only on considerations of "inefficiency." The plaintiff asserts

that the hospital's response to her request is "the sort of rigid, inflexible approach that employers are admonished by the law not to adopt with respect to qualified handicapped individuals." The plaintiff further asserts that extension of her leave would not have been unduly burdensome to the hospital and its failure to give such an accommodation results in a violation of G. L. c. 151B, § 4 (16). We reject the plaintiff's arguments.

Although the issue of providing indefinite leave has not been squarely addressed in Massachusetts, there are a number of relevant Federal cases decided on this issue under the ADA. An open-ended or indefinite leave extension is not required under the ADA. See *Watkins* v. *J & S Oil Co.*, 164 F.3d 55, 61-62 (1st Cir. 1998); *Gantt* v. *Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (1st Cir. 1998) ("Reasonable accommodation does not require the employer to wait indefinitely for an employee's medical condition to be corrected"); *Duckett* v. *Dunlop Tire Corp.*, 120 F.3d 1222, 1226 (11th Cir. 1997), quoting *Myers* v. *Hose*, 50 F.3d 278, 282 (4th Cir. 1995) (employer does not violate ADA by refusing to grant employee's request for " 'a period of time in which to cure his disabilities' where the employee 'sets no temporal limit on the advocated grace period'"); *Hudson* v. *MCI Telecommunications Corp.*, 87 F.3d 1167, 1169 (10th Cir. 1996) (because employee presented no evidence when she could "expect to resume her regular duties," employer "was not required to wait indefinitely for her recovery"); *Myers* v. *Hose, supra* at 283 ("Nothing in the text of the reasonable accommodation provision [of the ADA] requires an employer to wait an indefinite period for an accommodation to achieve its intended effect"; rather, term "reasonable accommodation" refers to accommodation "which presently, or in the immediate future, enables the employee to perform the essential functions of the job"). We conclude it is also not reasonable under G. L. c. 151B, § 4 (16). A request for a limited extension, setting a more definite time for the employee's return to work, may, however, constitute a reasonable accommodation, under the ADA as well as G. L. c. 151B,. § 4 (16), based on the circumstances. See *Garcia-Ayala* v. *Lederle Parenterals, Inc.*, 212 F.3d 638, 650 (1st Cir. 2000) (reciting factors to be considered and holding that, under

the circumstances, requested two-month extension was reasonable); *Criado* v. *IBM Corp.*, 145 F.3d 437, 443 (1st Cir. 1998) ("A leave of absence and leave extensions are reasonable accommodations in some circumstances"); *Ralph* v. *Lucent Techs., Inc.*, 135 F.3d 166, 172 (1st Cir. 1998) (four-week leave extension imposed by District Court reasonable); United States Equal Employment Opportunity Commission Technical Assistance Manual on the Employment Provisions (Title I) of the Americans with Disabilities Act III-23 ("Flexible leave policies should be considered as a reasonable accommodation when people with disabilities require time off from work because of their disabilities. An employer is not required to provide additional paid leave as an accommodation, but should consider allowing use of accrued leave, advanced leave, or leave without pay, where this will not cause an undue hardship").

At the time the plaintiff requested a leave extension, she did not indicate when she would be able to return to her duties as an admitting assistant. The record also suggests that the plaintiff's request for an extension was to preserve her seniority while the hospital explored the possibility of creating a rehabilitation position for her, and not to provide time for her ultimately to return to her admitting assistant position. Furthermore, the fact that the plaintiff subsequently applied for, and returned to, a part-time position as an admitting assistant is immaterial. That application was not made until December, 1995, and only after further medical evaluation and treatment did the plaintiff become a part-time admitting assistant in August, 1996. As of September, 1995, however, the plaintiff and the hospital essentially agreed that the plaintiff would not be able to work as an admitting assistant, and the plaintiff did not indicate when (if ever) she would be able to return to her position. The hospital was not required to extend the plaintiff's leave indefinitely as an accommodation to her disability, especially not to facilitate her return to a new position it was not obligated to create.

c. *Reserve position.* The plaintiff further asserts that the hospital failed to provide her with a reasonable accommodation because it did not assign her to a reserve position, which would

have preserved her seniority and employment status. The plaintiff did not request this accommodation in the summer of 1995, but argued before the Superior Court that it was available and that the employer had a duty to offer it on its own initiative as a reasonable accommodation. We disagree.

"[I]t is the employee's initial request for an accommodation which triggers the employer's obligation to participate in the interactive process of determining one." *Taylor* v. *Principal Fin. Group, Inc.*, 93 F.3d 155, 165 (5th Cir.), cert. denied, 519 U.S. 1029 (1996) (discussing 29 C.F.R. § 1630.9 & App. [1995]). See *Jacques* v. *Clean-Up Group, Inc.*, 96 F.3d 506, 514 (1st Cir. 1996), citing *Taylor* v. *Principal Fin. Group, Inc.*, *supra*, with approval. "Once a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation . . . through a flexible, interactive process that involves both the employer and the qualified individual with a disability." 29 C.F.R. § 1630 App. (2001). The plaintiff gave no indication in the summer of 1995 that she was able to perform the duties of an admitting assistant, even one shift per quarter (the minimum amount of work required to preserve status as a reserve employee). The March workplace simulation established that the plaintiff would not be able to perform the essential functions of her position, and she did not challenge this assessment throughout the summer of 1995. Instead, the plaintiff pursued a different position at the hospital through Palmer, confirming a view that she could not return as an admitting assistant, and her failure to request an accommodation for the position she left as an admitting assistant is fatal to her claim.

The judge did not err in granting the defendants' motion for summary judgment on the plaintiff's claim of employment discrimination on the basis of disability because the plaintiff could not establish a necessary element of the claim, namely, that the defendants failed to provide a reasonable accommodation. The accommodations the plaintiff asserts should have been provided were either not reasonable, not

required under G. L. c. 151B, § 4 (16), or never requested or even suggested by the plaintiff.[7]

B. *Hiring preference under G. L. c. 152, § 75A.* The plaintiff argues that the hospital failed to give her the hiring preference to which she was entitled under G. L. c. 152, § 75A.

The plaintiff misconstrues the law. General Laws c. 152, § 75A, reads in pertinent part: "Any person who has lost a job as a result of an injury compensable under this chapter shall be given preference in hiring by the employer for whom he worked at the time of compensable injury *over any persons not at the time of application for reemployment employed by such employer*; provided, however, a suitable job is available" (emphasis added). The statute clearly states that a reapplying, formerly injured employee is only given preference in hiring over persons not employed by the employer at the time of the application for reemployment. The plaintiff has not alleged that the other employee, to whom the positions were given, was not employed by the hospital at the time the plaintiff reapplied. In fact, the plaintiff acknowledges that the hospital hired the other employee in February, 1995. Summary judgment in favor of the hospital on this count was appropriate.

C. *Fraudulent and negligent misrepresentation.* Finally, the plaintiff asserts that the judge erred in granting summary judgment to the defendants on her claims of fraudulent and negligent misrepresentation. In order to establish such a claim, the plaintiff, at a minimum, must establish that the defendant "made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage." *Danca* v. *Taunton Sav. Bank,* 385 Mass. 1, 8 (1982), quoting *Barrett Assocs.* v. *Aronson,* 346 Mass. 150, 152 (1963). It is sufficient to show "proof of a statement made, as of the party's own knowledge, which is false, provided the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge"; actual intent to deceive on the part of the defendants need not

---

[7]Our conclusion that the hospital did not engage in employment discrimination under G. L. c. 151B, § 4 (16), also resolves claims against Gasior, under G. L. c. 151B, § 4 (5), of aiding and abetting discrimination.

be shown. *Powell* v. *Rasmussen*, 355 Mass. 117, 118 (1969), quoting *Chatham Furnace Co.* v. *Moffatt*, 147 Mass. 403, 404 (1888).

In the instant case, the plaintiff has established no fact that illustrates her detrimental reliance on any representations the hospital may have made to her or to Palmer, assuming that Palmer was acting as an agent of the plaintiff. The plaintiff does not state that she took any action or forwent any action in reliance on any statement the hospital may have made. In fact, the record indicates numerous statements were made by the plaintiff's attorney during the summer of 1995, indicating that the plaintiff was suspicious of, and not relying on, the statements made by the hospital. Without establishing an inducement to action or forbearance, the plaintiff cannot meet her burden of proving misrepresentation at trial, and summary judgment is appropriate.

III. *Conclusion.*

Although the judge erroneously concluded that the plaintiff's application for, and receipt of, disability benefits on the basis of "temporary total disability" estopped her from claiming employment discrimination under G. L. c. 151B, § 4 (16), summary judgment was appropriate because the plaintiff did not have any reasonable expectation of establishing that the hospital failed to provide a reasonable accommodation for her disability. Furthermore, the judge's decision to award summary judgment to the hospital on the plaintiff's claims under G. L. c. 152, § 75A, and on her claims of fraudulent and negligent misrepresentation was proper.

*Judgment affirmed.*