Troy, Paul E., J.
The Plaintiff, Douglas Godfrey (“Godfrey”), brought this action against Defendant, Boston Globe Newspaper Company, Inc. (“the Globe”), alleging (1) discrimination on account of his disability and workers’ compensation claims, (2) failure to hire following a compensable workplace injury, (3) defamation, (4) wrongful termination in violation of public policy, and (5) invasion of privacy. Defendant moved for Summary Judgment on all claims. For the reasons discussed below, Defendant’s Motion for Summary Judgment is ALLOWED.
BACKGROUND
The following facts are undisputed, unless otherwise noted. In 1977, Godfrey began working for the Globe as a substitute paper handler. At some point prior to 1997, he was promoted to apprentice pressman and then journeyman pressman. Pressman duties included preparing and running the press, loading the rolls, and ensuring the newspaper product was completed in a timely fashion. Climbing on the press to make adjustments was a normal part of the job.
Godfrey was promoted from his pressman position to assistant foreman around 1997. He worked in this position until August 2003, when he was terminated. As an assistant foreman, Godfrey was responsible for supervising a “crew” on the press, but he was also required to perform much of the same physical press work that he had as a pressman. Even in his new supervisory role, Godfrey was still climbing on the press as much as he had as a pressman. Godfrey does not dispute that climbing on the presses is an essential function of both the pressman and assistant foreman roles.
While employed by the Globe, Godfrey was out of work for periods of time due to work-related injuries, including a slip and fall caused by an oil spill in January 2002. As a result of that fall, Godfrey was out of work for the majority of the time between January 2002 and June 2003. He sustained damage to his right knee, shoulder, and neck, and underwent two reconstruction surgeries on his right knee and one reconstruction surgery on his left shoulder.
Godfrey asserts that he complained of the oil spill problem to other Globe employees on numerous occasions between 1998 and 2004. In addition, it is undisputed that he had multiple communications with the Occupational Safety and Health Administration (“OSHA”) between May 2003 and July 2004. However, OSHA assured him that his complaints would be kept anonymous.
Upon returning to work in June 2003, Godfrey asserts that he had a doctor’s note, which stated that he should not work for more than five hours at a time. Godfrey testified at his deposition that he showed the note to the general foreman, Frank Volpe, and the assistant foreman, James Alexander.[1] At that point, James Alexander allegedly took the note and ripped it up, while Mr. Volpe remained silent. Despite this incident, Godfrey could not recall if he actually worked any full shifts (more than five hours) upon his return, nor he did recall requesting any changes to his job duties to accommodate his lingering oil spill injuries.
In any event, due to his injuries, Godfrey did not work any full weeks between his return on June 3, 2003 and July 21, 2003, at which time he left work again, voluntarily. Although Godfrey has indicated that he is medically unable to do a pressman’s job,[2] he claims that there are other jobs at the Globe that he knows he can do, and is hoping to do in the future.[3] Additionally, in contradiction to his own testimony and admission that climbing on the presses is an essential function of the assistant foreman role, Godfrey asserts by affidavit that he “could perform the essential functions of a press foreman in that [he] wouldn’t need to be out on the vibrating and [at] times slippery, press room floors."
Godfrey’s employment was terminated on August 20, 2003.[4] Shortly thereafter, Godfrey’s picture was posted at security booths in the Globe’s Boston and Billerica facilities. Godfrey alleges that the posters generated a stoiy around the workplace to the effect that he stole from the Globe, which damaged his reputation. In addition, Godfrey claims that he has been the subject of intrusive surveillance since the summer of 2003.
The summary judgment record reflects that the Globe has hired no new pressmen since Godfrey’s termination.[5] Further, several pressmen have since accepted buy-outs from the company.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively dem *696 onstrating both the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
Discrimination Claims
“To establish a prima facie case for employment discrimination on the basis of handicap, the plaintiff must show that [he] was terminated, that [he] is ‘handicapped,’ that [he] is a ‘qualified handicapped person,’ and that he was terminated because of his handicap.” Russell v. Cooley Dickenson Hospital, 437 Mass. 443, 449 (2002), quoting Dartt v. Browning-Ferris Indus., Inc. (Mass.), 427 Mass. 1, 7 (1998). A qualified handicapped person is “a handicapped person who is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of a particular job with reasonable accommodation to his handicap.” G.L.c. 151B, §1(16). Similarly, to make a case for discrimination on the basis of workers’ compensation claims, Godfrey must establish that he was a qualified handicapped person when he was terminated. G.L.c. 152, §75B.
The Globe argues that Godfrey has failed to establish a prima facie case of discrimination because he was not and is not a qualified handicapped person. Specifically, the Globe argues that there is no evidence in the summary judgment record to support a jury finding that Godfrey can perform the essential functions of the pressman or assistant foreman jobs, even with reasonable accommodation. The court agrees that Godfrey is not a qualified handicapped individual.
Godfrey admits that climbing is an essential function of both the pressman and assistant foreman jobs. Viewing the facts in the light most favorable to Godfrey, the non-moving party, he was and is unable to perform this job function. Beyond his testimony that he cannot do a pressman’s job, he wrote a letter to the Globe in December 2004 stating, “I [may] need a position that would not involve climbing or standing on the presses.” In addition, Godfrey’s complaint requests relief in the form of an order that the Globe “offer[ ] him alternative employment which would not require climbing or standing on vibrating pressroom machinery.”
While Godfrey may desire a new or modified position that does not require climbing, “reasonable accommodation does not include waiving or excusing an inability to perform an essential job function.” Cox v. New England Telephone & Telegraph Co., 414 Mass. 375, 390 (1993). In Massachusetts, employers are not required to transfer a disabled employee to another open position in the organization, nor are they required to “fashion a new position” for the employee. Russell 437 Mass. at 454. Therefore, the Globe’s failure to transfer Godfrey to a less physically-intensive position does not constitute unlawful discrimination.
Moreover, there is no evidence that Godfrey ever discussed with or requested from the Globe an accommodation that would enable him to perform the essential functions of his job. “It is the employee’s initial request for an accommodation which triggers the employer’s obligation to participate in the interactive process of determining one.” Russell 437 Mass. at 457, quoting Taylor v. Principle Financial Group, Inc., 93 F.3d 155, 165 (5th Cir.), cert. denied, 519 U.S. 1029 (1996). Failure to request an accommodation for the position left is fatal to a claim for discrimination. Russell, 437 Mass. at 457.
Although Godfrey may have requested light-duty jobs from his supervisors in late spring 2003, he does not allege that he requested accommodations for his specific job. The Russell opinion illustrates the distinction between requesting another job and requesting reasonable accommodation for one’s current job. In that case, the Court noted that the “plaintiff never requested to return to her former position . . . nor did she indicate that she would be able to perform the essential functions of that position with accommodation .. . Instead, she sought a different position in the hospital, an accommodation that the hospital was under no obligation to provide.” Id. at 454. Godfrey similarly failed to request an accommodation that would permit him to perform the essential functions of his job, namely climbing, and therefore, the Globe was not legally obliged to consider any other requests.[6]
Assuming, as Godfrey asserts, that the Globe has a policy or practice of allowing injured employees to perform less physical jobs when they can no longer perform their own jobs, the Globe would be required to apply that practice evenly to handicapped and non-handicapped employees. However, there is no competent evidence in the record to rebut the Globe’s assertion that it simply has no more light-duty positions available in the pressroom, given its recent and ongoing staff reductions.[7]
In sum, the record does not reflect any evidence that would permit a jury to find that Godfrey was a qualified handicapped person at the time he was terminated. Further, in the absence of a policy permitting injured employees to return to non-physical jobs, the Globe has no obligation to waive the essential functions of Godfrey’s old position. Finally, even assuming such a policy exists, the law does not reqúire the Globe to place Godfrey in a light-duty position where no such position is available. Therefore, his discrimination *697 claims, both on the basis of handicap and receipt of workers’ compensation, cannot prevail.
Failure to Hire Following Compensable Workplace Injury
General Laws c. 152, §75A provides that “[a]ny person who has lost a job as a result of an injury compensable under this chapter shall be given preference in hiring by the employer for whom he worked at the time of compensable injury over any persons not at the time of application for reemployment employed by such employer; provided, however, that a suitable job is available.’’ Godfrey asserts that the Globe violated this statute in failing to rehire him.
Assuming Godfrey was terminated because of his injury, he must also offer evidence that a suitable job was or is available for him. Godfrey has failed to meet his burden of production on this element for a number of reasons. First, while he points to the fact that his old job has not been filled, the evidence does not demonstrate that Godfrey would be able to perform that job given his acknowledgment that he cannot climb or stand on vibrating machinery. As noted above, the Globe is not required to hire him for a job that he cannot do with or without reasonable accommodation.
Next, even if Godfrey were qualified to perform his old job, the Globe is legally entitled to downsize its operations. If Godfrey’s particular position is no longer needed, the Globe does not have an obligation to rehire for the position. The Globe is merely obligated to give Godfrey’s application preference if it does seek to restore that position. There is no evidence in the summary judgment record that the Globe has or is planning to restore Godfrey’s old position; thus, he is not entitled to be rehired for that position.
Finally, although the Globe may be required to give Godfrey hiring preference with respect to light-duty positions that become available, the record reflects no evidence that such positions are available, or have been filled, since Godfrey re-applied. Therefore, Godfrey’s claim under G.L.c. 152, §75A must be dismissed.
Defamation
“To prevail on a claim of defamation, a plaintiff must establish that the defendant was at fault for the publication of a false statement regarding the plaintiff, capable of damaging the plaintiffs reputation in the community, which either caused economic loss or is actionable without proof of economic loss.” White v. Blue Cross and Blue Shield of Mass., Inc., 442 Mass. 64, 66 (2004). The defamatory statement at issue in this case is a poster with Godfrey’s picture, which was posted in the security stations around the Globe facilities in Boston and Billerica.[8]
Godfrey argues that the posting of his photograph in the security booths, “where it is common knowledge that such posting meant that the subject was excluded from the premises, held him up to scorn and ridicule . . .” by his former co-workers. Under Massachusetts law, “[a] false statement that ‘would tend to hold the plaintiff up to scorn, hatred, ridicule or contempt, in the minds of any considerable and respectable segment in the communily,’ would be considered defamatory.” Phelan v. May Department Stores, Inc., 443 Mass. 52, 56 (2004), quoting Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 853 (1975).
Although it is unclear exactly what, if any, words were written on the posters, there is some evidence that Globe employees understood the posters to mean that the individual appearing thereon had been fired and was no longer allowed on Globe premises. Whether or not such a statement is somehow defamatory is irrelevant, however, because the parties do not dispute that Godfrey was indeed terminated and thereafter banned from the Globe facilities. Thus, any statement on the poster to this effect is true, and as a matter of law, cannot constitute defamation. Jones v. Taibbi 400 Mass. 786, 794 (1987). To prevail on a defamation claim, Godfrey would need to prove an additional defamatory meaning in the poster, which was communicated by the Globe.
To save his claim, Godfrey argues that the posters generated a story around the workplace that he stole from the company and was otherwise dishonest, and that these statements are false and defamatory. Even if this were true, there is no competent evidence in the summary judgment record that such statements came from those with authority to speak for the Globe.[9] Without such evidence, a jury cannot reasonably find the Globe “at fault” for generating stories about Godfrey, other than that he was fired and banned from the facilities. Thus, Godfrey’s defamation claim cannot survive summary judgment.
Wrongful Termination in Violation of Public Policy
In addition to claiming discrimination, Godfrey claims that he was terminated for complaining to OSHA about oil spills in the Globe’s pressroom. In support of this claim, Godfrey argues that the timing of his termination raises the inference that the Globe “took action against him wrongfully on account of actions he took in support of the strong public policy favoring workplace safety.”
In order to succeed on a claim for wrongful discharge in violation of public policy, Godfrey must establish that the Globe terminated him on account of his safety-related complaints. However, there is no evidence in the record to warrant a jury finding that the Globe even knew about his complaints to OSHA. Godfrey testified at his deposition that while people around the workplace knew that he complained internally about the oil spills, he never told anyone at the Globe that he had called, or was going to call OSHA, prior to his termination. Furthermore, OSHA assured Godfrey that his complaints would be kept anony *698 mous. Without evidence that the Globe’s decision-makers knew of Godfrey’s complaints, his wrongful termination claim cannot prevail.
Invasion of Privacy
Godfrey’s complaint indicates that this claim is brought against “Travelers,” which is not a party in this case.[10] In that the Globe has moved for summary judgment on this claim, the court finds that there is no evidence in the record to support a jury finding that the Globe directed or controlled any of the actors accused of violating Godfrey’s privacy. The only evidence in the record reflects that Travelers, the workers’ compensation insurer, hired the detectives that allegedly intruded on Godfrey’s privacy. As such, Godfrey’s claim against the Globe for invasion of privacy cannot prevail.
ORDER
For the above-stated reasons, Defendant’s Motion for Summary Judgment as to all counts of the complaint is ALLOWED.

Godfrey held the same position at the Globe as James Alexander, and Mr. Alexander had no authority to dictate Godfrey’s working hours.

The deposition during which Godfrey made this statement occurred on September 21, 2005.

Godfrey has “been cleared to do light sedentary type work . . .” The reports of his doctors are consistent, although one doctor noted, in a November 2004 report, that Godfrey “may be able to return to work in his regular capacity as a pressman when he recovers from his recent surgery on his left knee.” Godfrey asserts that at least three other employees have been accommodated with new or modified positions after being injured in the workplace. In December 2004, over ayear after his termination, Godfrey wrote a letter to the Globe requesting such a position.

The Globe’s stated reason for terminating Godfrey was that he wrongitiily retained workers’ compensation payments, while also receiving his full salary, during the time he was out of work in 2002 and 2003. Although Godfrey disputes any wrongdoing on his part, the court need not reach the actual reason for Godfrey’s termination because this motion has been resolved by the court on the basis that Godfrey was not a qualified handicapped individual, entitled to protection under our discrimination laws.

As of April 2006.

Even if a fact-finder were to construe Godfrey’s 2004 letter asking to return to work as a request for accommodation for his old position, the letter was written over a year after Godfrey was terminated. The Globe had no legal obligation to discuss reasonable accommodations with Godfrey at that point.

Godfrey offers an affidavit from his father, Robert Godfrey, Sr. (“Godfrey, Sr.”), portions of which the Globe has moved to strike from the record. The relevant portions of the affidavit indicate that Godfrey, Sr. worked for the Globe for approximately thirty-five years, until his retirement in 1991, and that he observed a Globe “policy” during that time, which permitted injured employees to return to work in non-physical positions when they were physically incapable of performing their old jobs. In elaborating on the policy, Godfrey, Sr. described four employees who were given non-physical jobs after sustaining physical injuries. While this portion of the affidavit is based on personal knowledge, Godfrey, Sr. goes on to state that “vacancies regularly occur in the [non-physical) positions I noted . . .” The Globe objects to this statement because Godfrey has been retired from the Globe for the last fifteen years, and thus, does not have personal knowledge of the current policies or hiring needs of the Globe. To the extent that Godfrey, Sr. was testifying to the current practices of the Globe, that testimony is stricken because it is not based on personal knowledge, such that it would be admissible in evidence. See Mass.R.Civ.P. 56(e).

While Godfrey asserts that his picture was posted in “numerous places,” the Globe contends that the poster was placed only in the company’s security stations. When confronted about any other places that he thought the poster might have been placed, Godfrey acknowledged that he could only remember being told that it was posted in the security windows.

Godffey testified, “I was told there was a story generated about me stealing money. That’s all I can tell you.” When asked who started that story, Godfrey replied, “I don’t remember exactly who I spoke to.”

Godfrey moved to amend his complaint to add this party as a defendant, but his motion was denied for lack of timeliness.