**Richard CANFIELD, Plaintiff,**

v.

**CON–WAY FREIGHT, INC. and Gregory Pawelski, Defendants.**

**Civil Action No. 06–11945–NMG.**

United States District Court, D. Massachusetts.

July 23, 2008.

Elizabeth M. Adler, Wesley S. Chused, Looney & Grossman LLP, Boston, MA, Frank B. Shuster, Constangy, Brooks & Smith, LLC, Atlanta, GA, for Defendants.

Simon Dixon, Dixon & Associates, Lawrence, MA, for Plaintiff.

## MEMORANDUM & ORDER

GORTON, District Judge.

### I. *Background*

In this case, which arises from the termination of the plaintiff-employee by the defendant-employer, the defendants have filed a motion for summary judgment.

#### A. Factual Background

Plaintiff Richard Canfield ("Canfield") was hired by defendant Con-way Freight, Inc. ("Con-way"), a trucking and logistics company engaged in the transportation of heavy freight in interstate commerce, in April, 2003 to work as a Supplemental Driver Sales Representative ("DSR"). Ninety days later Canfield became a regular DSR. Defendant Gregory Pawelski ("Pawelski") is the Director of Human Resources at Con-way.

No written documentation exists describing the essential functions of the DSR position or the maximum amount of weight

that a DSR would normally have to lift but both Canfield and Pawelski have testified that the duties include loading and unloading trailers, driving, picking up and delivering freight and working on a loading dock. In performing those duties, a DSR must lift, push, pull and otherwise move freight weighing 25 to 50 pounds or more. At the time of his hiring, Canfield signed a document stating that he would not commence any action or suit relating to his employment with Con-way more than six months after the event which is the basis of the action or suit or after the termination of such employment, whichever came first.

On January 6, 2005, Canfield sustained a job-related injury to his right shoulder. Six days later, as a result of the injury, he submitted a request for a leave of absence and in June, 2005, he had surgery on his shoulder. On January 20, 2006, Canfield's surgeon issued a report in which he: 1) stated that Canfield had reached maximum medical improvement, 2) imposed a restriction that Canfield lift no more than 25 pounds for one third of the day with no pushing, pulling or carrying over 60 pounds, 3) recommended that Canfield give "strong consideration" to job retraining and to finding another occupation and 4) offered to authorize more strength training for Canfield to see if he could improve over time.

On February 24, 2006, Con-way was informed by the administrator for its workers' compensation claims that Canfield's doctor had determined that he had reached maximum medical improvement with respect to his shoulder, that he could not return to his position as a DSR and that Con-way could begin its job reassignment process. Four days later Pawelski sent Canfield a letter ("the February 28 letter") stating that 1) Canfield would be granted an additional two weeks of leave

to obtain a medical certification allowing him to return to his regular duties as a DSR, 2) if he could not return to work with or without reasonable accommodation, Con-way would review current open positions that he might be qualified to fill both medically and vocationally and 3) if no positions could be found that fit Canfield's restrictions, Con-way would not create a position for him and he would be terminated. Pawelski did not review Canfield's medical records when he signed the February 28 letter and Canfield did not obtain a medical certification because his surgeon told him that he could not seek it.

On March 1, 2006, Patricia Melkvik ("Melkvik"), Con-way Human Resources, contacted Canfield to discuss what skills, if any, he had for positions other than a DSR and whether he was interested in relocating in the event available positions existed at other company facilities. Canfield indicated that he had no desire to relocate and contends that Melkvik simply recited a checklist of skills to Canfield and did not ask him what skills he possessed. He offers no evidence of the content of his conversation with Melkvik. The parties disagree as to whether the Defendants looked for positions which Canfield could perform with reasonable accommodation within the Boston area. Melkvik contends that she contacted service centers in the Boston area to determine whether they had any non-driving positions available but Canfield responds that nobody, including Melvik, asked Robert Corthell ("Corthell"), a Personnel Supervisor at Con-way, to make reasonable accommodation or modifications for Canfield in the DSR position. Corthell also allegedly failed to discuss with Canfield his restrictions. According to Con-way's Service Center Manager, Corthell was responsible for obtaining information regarding Canfield's medical condition and for assignment in any light duty program. Con-way's Dracut facility

had light duty for some of their truck drivers in January, 2005 and its Personnel Policies and Procedures recite that, when an employee has permanent work restrictions and is subject to administrative termination, the company

> may, and if required by law will, consider reasonable accommodations to allow the employee to return to work ... all such cases should be referred to Human Resource Department at the General Office.

Canfield was terminated effective March 28, 2006. Pawelski does not remember reviewing Canfield's medical records when he signed the termination letter nor did he speak to Canfield or his treating physician directly prior to that day. Canfield testified at his deposition that, at the time of his termination, he was unable to perform the DSR duties but that as he sat there that day, one year after his termination, he was uncertain whether he would be able to perform the job of a local or line haul driver at Con-way. In July, 2006, Canfield settled his workers' compensation claim against Con-way for $50,000. Prior to his termination, Canfield never suggested to anyone at Con-way that he believed there might be some way for him to perform his duties as a DSR.

### B. Procedural History

On September 22, 2006, Canfield filed his complaint in state court alleging against both defendants: 1) violation of M.G.L. c. 152, § 75B ("the Workers' Compensation Act") which prohibits, among other things, an employer from discriminating against an employee because that employee has been awarded workers' compensation benefits ("workers' compensation retaliation claim") (Count I), 2) handicap discrimination in violation of M.G.L. c. 151B, § 4 (Count II), 3) age discrimination in violation of M.G.L. c. 151B, § 4 (Count

III) and 4) intentional infliction of emotional distress (Count IV). The Defendants removed the case to federal court in October, 2006. One month later, Canfield filed a motion to remand to state court, which this Court denied in May, 2007. On January 24, 2008, the Defendants filed their motion for summary judgment which is opposed.

## II. *Motion for Summary Judgment*

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991)(quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable infer-

ences in that party's favor. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

### B. Analysis

#### 1. Plaintiff's Age Discrimination Claim

 Defendants argue that Canfield has presented no triable issue of fact with respect to his age discrimination claim. At his deposition, Canfield stated that he did not believe that his age had anything to do with his termination. In his opposition to the Defendants' motion for summary judgment, Canfield states that he held that subjective belief but also states that he was over 40 years old when he was terminated. He offers no other evidence or argument that he was terminated based upon his age. Viewing the evidence in the light most favorable to the plaintiff, as required in deciding a motion for summary judgment, Canfield has not offered sufficient evidence to create a triable issue of fact and the Defendants are entitled to judgment as a matter of law. The Defendants' motion for summary judgment with respect to Count III alleging age discrimination will be allowed.

#### 2. Plaintiff's Handicap Discrimination Claim

 To establish a prima facie case of discriminatory discharge under Chapter 151B, the plaintiff must show, among other things, that he is a qualified handicapped person. *Russell v. Cooley Dickinson Hosp., Inc.,* 437 Mass. 443, 449–50, 772 N.E.2d 1054 (2002). A qualified handicapped person is a

handicapped person who is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of a particular job with reasonable accommodation to his handicap.

M.G.L. c. 151B, § 1(16). Defendants argue that Canfield has not proffered facts sufficient to raise a jury question as to his ability to perform the essential functions of the DSR position with reasonable accommodation. Defendants also argue that the record shows that prior to Canfield's termination, Defendants communicated with him about his ability to perform other jobs which might be vacant at other service centers. After determining that no such positions existed, Con-way terminated Canfield.

Canfield responds that he is a qualified handicapped person under the expanded definition found in M.G.L. c. 152 § 75B(1) which states:

Any employee who has sustained a work-related injury and is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of such job with reasonable accommodations, shall be deemed to be a qualified handicapped person under the provisions of chapter one hundred and fifty-one B.

Canfield asserts that the relevant statutory definition includes any individual who suffers a work-related injury and was terminated while receiving workers' compensation benefits. The Court disagrees. That provision and the relevant case law suggest only that a person on workers' compensation need not show that he is handicapped but still must demonstrate an ability to perform the essential functions of a particular job. *See, e.g., Gilman v. C & S Wholesale Grocers, Inc.,* 170 F.Supp.2d 77 (D.Mass.2001); *Everett Indus., Inc. v.*

*Mass. Comm'n Against Discrimination,* 49 Mass.App.Ct. 1116 (2000). Defendants have conceded, for the purpose of their motion, that Canfield is a handicapped individual but argue, nevertheless, that Canfield was unable to perform the essential functions of his job. The definition upon which Canfield relies does not eliminate that requirement from the definition of "qualified handicapped individual".

Canfield offers no other support for his contention that he was a qualified handicapped person, i.e., that he could perform the essential functions of the job with or without reasonable accommodation. He states that a written description of the DSR position does not exist yet offers no evidence that the requirements of that position were anything other than as described at the depositions of Canfield and Pawelski.

Canfield highlights the following evidence: 1) his doctor's letter which imposes restrictions and offers to continue to work with Canfield on strength training to see if he might improve over time, 2) the fact that his doctor would not allow him to seek medical certification to resume his duties and 3) his uncertainty (expressed at his deposition) that he would be able to perform the job of a local or line haul driver at Con-way. Canfield does not dispute that on the date of his termination he believed he was unable to perform the DSR duties or that he never told anyone at Con-way he thought he could perform the DSR position.

Viewing the evidence in the light most favorable to Canfield, there is no genuine issue of material fact with respect to whether he was able to perform the essential functions of the job with or without reasonable accommodation. The medical limitations imposed on Canfield prevented him from performing the DSR position as described by him and Pawelski and at no time during his employment did Canfield or his doctor suggest that there was an accommodation that would allow him to perform that job. The evidence that Canfield introduces in an effort to create a genuine issue of material fact does not permit a reasonable juror to infer that he was a qualified handicapped person for purposes of either Chapters 151B or 152, § 75B(1).

 Canfield also claims that Defendants are liable for failure to engage in an interactive process with him regarding accommodations. Such a failure to engage would create liability on the part of Defendants. *Russell,* 437 Mass. at 457, 772 N.E.2d 1054. The cited provision of the Handicap Discrimination Guidelines of the Massachusetts Commission Against Discrimination ("MCAD") refers to the requirement of engaging in an informal interactive process with a "qualified handicapped employee". § VII(B). If Canfield has not, however, first presented a genuine issue of material fact with respect to whether he is a qualified handicapped individual, there is no need to consider whether Defendants engaged in an interactive process. Moreover, the Massachusetts Supreme Judicial Court ("the SJC") has held that a plaintiff's failure to request an accommodation is fatal to a claim that the employer failed to engage in an interactive process. *Russell,* 437 Mass. at 457, 772 N.E.2d 1054.

Canfield has failed to produce any evidence that he requested an accommodation for his DSR position or what accommodation would have allowed him to perform the duties of the DSR position. Consequently, Defendants' motion for summary judgment with respect to Count II, alleging handicapped discrimination, will be allowed.

### 3. Plaintiff's Workers' Compensation Retaliation Claim

Under M.G.L. c. 152, § 75B(2):

No employer or duly authorized agent of an employer shall discharge, refuse to hire or in any other manner discriminate against an employee because the employee has exercised a right afforded by this chapter . . .

To establish a prima facie case under this provision, a plaintiff must establish that 1) he engaged in an activity protected by the Workers' Compensation Act, 2) the defendant was aware of that protected activity, 3) the defendant thereafter took an adverse employment action against the plaintiff and 4) but for the plaintiff's activity the defendant would not have taken such an adverse employment action. *Benoit v. Technical Mfg. Corp.*, 331 F.3d 166, 177 n. 5 (1st Cir.2003).

Defendants concede that Canfield has established the first three prongs of the subject claim but they deny that Canfield has presented evidence from which a reasonable juror could conclude that Defendants fired him because he filed a workers' compensation claim. Defendants contend that Canfield's only evidence in support of his workers' compensation retaliation claim is that he was terminated while receiving those benefits.

Canfield responds that he was not only terminated while receiving such benefits but that also he was administratively terminated because he was purportedly out too long on workers' compensation.

Canfield's conclusory and self-serving allegations with respect to the timing of his firing (particularly when that termination did not occur until 16 months after the filing of his workers' compensation claim) are insufficient as a matter of law to support a claim under M.G.L. c. 152, § 75B(2). *MacCormack v. Boston Edison Co.*, 423 Mass. 652, 663 n. 11, 672 N.E.2d 1 (1996); *see also Courtois v. Legal Seafoods, Inc.*, 2004 WL 231311, at *10 (Mass.Super. Feb. 6, 2004). Because Canfield has presented essentially no direct or circumstantial evidence that Defendants fired him due to his receipt of workers' compensation benefits, the Defendants' motion for summary judgment with respect to Count III, alleging a violation of M.G.L. c. 152, § 75B(2) will be allowed.

### 4. Pawelski's Liability

Although the SJC has not addressed the legal standard for finding an individual liable under M.G.L. c. 151B, the MCAD has addressed the issue. In order for an individual such as Pawelski to be held liable for a violation of M.G.L. c. 151B, the individual must have interfered with another's rights in a manner that was in deliberate disregard of those rights. *Woodason v. Town of Norton Sch. Comm.*, 2003 WL 554332, *4 (MCAD Feb. 19, 2003). Deliberate disregard requires an "intent to discriminate". In cases dependent upon circumstantial evidence alone, individuals may be held liable if:

a. They had the authority or the duty to act on behalf of the employer;

b. Their action or failure to act implicated rights under the statute; and

c. There is evidence articulated by the complainant that the action or failure to act was in deliberate disregard of the complainant's rights allowing the inference to be drawn that there was intent to discriminate or interference with the complainant's exercise of rights.

*Id.*

Because this Court has determined that Canfield has not presented a genuine issue of material fact with respect to Counts I, II and III, the Court need not consider

Pawelski's individual liability separately. As a matter of law, Canfield was not the victim of discrimination or retaliation resulting from his termination and therefore Pawelski cannot be held liable for such alleged violations.

### 5. Plaintiff's Intentional Infliction of Emotional Distress Claim

 With respect to Canfield's intentional infliction of emotional distress claim, Defendants argue that 1) the Workers' Compensation Act prohibits Canfield from pursuing a claim for mental or emotional harm arising out of a bona fide personnel action, 2) the claim is barred by failure to bring suit within the applicable limitations period and 3) the record is devoid of any evidence of "extreme and outrageous" behavior required to demonstrate an intentional infliction of emotional distress claim. Because Defendants first argument bars Canfield's emotional distress claim, the Court need not consider the other two.

With respect to the preemption effect of the Workers' Compensation Statute, the SJC has stated:

> Common law actions are barred by the exclusivity provision of the workers' compensation act where: "the plaintiff is shown to be an employee; his condition is shown to be a 'personal injury' within the meaning of the [workers'] compensation act; and the injury is shown to have arisen out of and in the course of ... employment".

*Green v. Wyman–Gordon Co.,* 422 Mass. 551, 558, 664 N.E.2d 808 (1996)(quoting *Foley v. Polaroid Corp.,* 381 Mass. 545, 548–49, 413 N.E.2d 711 (1980)).

 Emotional distress is compensable under the Workers' Compensation Act and therefore, Canfield's intentional infliction of emotional distress claim is barred. *Foley,* 381 Mass. at 550, 413 N.E.2d 711. Although Canfield cites case law pointing

to other causes of action that are not barred under the Workers' Compensation Act, he does not explain why in his case, unlike in other cases decided by the SJC, a claim for intentional infliction of emotional distress would not be barred. Consequently, Defendants' Motion for Summary Judgment will be allowed with respect to Count IV which alleges intentional infliction of emotional distress.

### ORDER

In accordance with the foregoing, the Defendants' Motion for Summary Judgment (Docket No. 19) is **ALLOWED.**

**So ordered.**